M. ELIZABETH DAY (SBN 177125)
eday@feinday.com
DAVID ALBERTI (SBN 220265)
dalberti@feinday.com
SAL LIM (SBN 211836)
slim@feinday.com
MARC BELLOLI (SBN 244290)
mbelloli@feinday.com
**FEINBERG DAY ALBERTI LIM &
BELLOLI LLP**
1600 El Camino Real, Suite 280
Menlo Park, CA 94025
Tel:  650.618.4360
Fax:  650.618.4368

*Attorneys for* Plaintiff
Monument Peak Ventures, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONUMENT PEAK VENTURES, LLC | CASE NO. |
| Plaintiff, | **COMPLAINT FOR PATENT INFRINGEMENT** |
| v. | |
| VICTOR HASSELBLAD AB, HASSELBLAD A/S, and HASSELBLAD INC., | **JURY TRIAL DEMANDED** |
| Defendants. | |

COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Monument Peak Ventures, LLC ("MPV"), by and through the undersigned counsel, hereby brings this action and makes the following allegations of patent infringement relating to U.S. Patent Nos. 6,760,485 ("the '485 patent"), 6,781,713 ("the '713 patent"), 7,032,182 ("the '182 patent") and 9,082,046 ("the '046 patent") against one or more of Victor Hasselblad AB, Hasselblad A/S, and Hasselblad Incorporated ("the Hasselblad Defendants"), and alleges as follows upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters.

## **NATURE OF THE ACTION**

1.     This is an action for patent infringement.  MPV alleges that the Hasselblad Defendants infringe one or more of the '485 patent, the '713 patent, the '182 patent, and the '046 patent, copies of which are attached as Exhibits A-D, respectively (collectively "the Asserted Patents").

2.     On or about May 17, 2017, MPV, a technology licensing company, approached the Hasselblad Defendants to offer a license to the Kodak patent portfolio woned by MPV. Since MPV acquired the Kodak portfolio it has successfully licensed several companies without resorting to litigation.  Consistent with MPV's overall strategy to use litigation only as a last resort, MPV expressed on several occasions its desire to consummate a license with the Hasselblad Defendants outside of litigation.

3.     On or about May 26, 2017 MPV informed the Hasselblad Defendants of their infringement through a data room that included a full list of all patents owned by MPV as well as evidence of use presentations detailing the Hasselblad Defendants' infringement. MPV made several requests to have a substantive discussion regarding the data room materials so as to avoid litigation.   The Hasselblad Defendants never agreed to have such a discussion.

4.     MPV alleges that the Hasselblad Defendants directly and indirectly infringe the Asserted Patents by making, using, offering for sale, selling, and/or

1

COMPLAINT FOR PATENT INFRINGEMENT

importing camera products and related hardware and software.   MPV seeks damages and other relief for the Hasselblad Defendants' infringement of the Asserted Patents.

**The Asserted Patents Come From the Iconic Kodak Patent Portfolio**

5.     The Asserted Patents claim inventions born from the ingenuity of the Eastman Kodak Company ("Kodak"), an iconic American imaging technology company that dates back to the late 1800s.  The first model of a Kodak camera was released in 1888.

 

6.     In 1935 Kodak introduced "Kodachrome," a color reversal stock for movie and slide film.  In 1963 Kodak introduced the Instamatic camera, an easy-to-load point-and-shoot camera.

 

7.     By 1976 Kodak was responsible for 90% of the photographic film and 85% of the cameras sold in the United States.

8.     At the peak of its domination of the camera industry, Kodak invented the first self-contained digital camera in 1975.

COMPLAINT FOR PATENT INFRINGEMENT



9.     By 1986 Kodak had created the first megapixel sensor that was capable of recording 1,400,000 pixels.  While innovating in the digital imaging space Kodak developed an immense patent portfolio and extensively licensed its technology in the space.  For example, in 2010, Kodak received $838,000,000 in patent licensing revenue.  As part of a reorganization of its business, Kodak sold many of its patents to some of the biggest names in technology that included Google, Facebook, Amazon, Microsoft, Samsung, Adobe Systems, HTC and others for $525,000,000.

10.     While scores of digital imaging companies have paid to license the Kodak patent portfolio owned by MPV, the Hasselblad Defendants have refused to do so without justification.

## THE PARTIES

11.     Plaintiff MPV is a Texas limited liability company with its principal place of business in Plano, Texas.

12.     Upon information and belief, Defendant Victor Hasselblad AB is a European corporation with a place of business at Utvecklingsgatan 2, Gothenburg, Sweden.

13.     Upon information and belief, Defendant Hasselblad A/S is a European corporation with a place of business at Hejrevej 30, Copenhagen, Denmark.

14.     Upon information and belief, Hasselblad Inc. is a Delaware corporation with a place of business at 1080A Garden State Road, Union, New Jersey 07083.

15.     Upon information and belief, DJI owns a majority stake in the Hasselblad Defendants.  Upon information and belief, certain products that are made, sold, offered for sale and imported by the Hasselblad Defendants are incorporated into products that are made, used, sold, offered for sale and imported by DJI.  *See*, *e.g.*, https://www.hasselblad.com/a6d-100c-dji-m600-pro/.

## JURISDICTION AND VENUE

16.     This action for patent infringement arises under the Patent Laws of the United States, 35 U.S.C. § 1 et. seq.  This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1338.

17.     This Court has both general and specific personal jurisdiction over the Hasselblad Defendants because the Hasselblad Defendants have committed acts within the Central District of California giving rise to this action and have established minimum contacts with this forum such that the exercise of jurisdiction over the Hasselblad Defendants would not offend traditional notions of fair play and substantial justice.  The Hasselblad Defendants, directly and through subsidiaries and intermediaries (including distributors, retailers, franchisees and others), have committed and continue to commit acts of infringement in this District by, among other things, making, using, testing, selling, importing, and/or offering for sale products that infringe the Asserted Patents.

18.     Venue is proper in this district and division under 28 U.S.C. §§1391(b)-(d) and 1400(b) because the Hasselblad Defendants transact business in the Central District of California and have committed and continue to commit acts of direct and indirect infringement in the Central District of California.

## COUNT 1:  INFRINGEMENT OF THE '485 PATENT

19.     The allegations of paragraphs 1-18 of this Complaint are incorporated by reference as though fully set forth herein.

20.     MPV owns by assignment the entire right, title, and interest in the '485 patent.

21.     The '485 patent was issued by the United States Patent and Trademark Office on July 6, 2004 and is titled "Nonlinearly Modifying a Rendered Digital Image."  A true and correct copy of the '485 patent is attached as Exhibit A.

22.     Upon information and belief, the Hasselblad Defendants have directly infringed at least claim 21 of the '485 patent by making, using, testing, selling, offering for sale, importing and/or licensing in the United States without authority their image processing software, such as Phocus software, ("the '485 Infringing Instrumentalities") in an exemplary manner as described below:

23.     One or more of the '485 Infringing Instrumentalities meet all the limitations of claim 21 of the '485 patent.   In particular, the '485 Infringing Instrumentalities perform a method for processing a rendered image, including allowing a single user adjustable exposure setting to be changed.




http://static.hasselblad.com/2017/04/H6D-User-Manual-v1.4-170425.pdf

COMPLAINT FOR PATENT INFRINGEMENT

24. The '485 Infringing Instrumentalities also select an exposure modification transform responsive to changes in the exposure setting the transform accounting for a rendering used to produce the rendered image and effecting a change that appears as if a different exposure level was used to capture the image.



http://static.hasselblad.com/2014/12/Phocus_User-Manual_v17.pdf

25. The '485 Infringing Instrumentalities also select an exposure modification transform responsive to changes in the exposure setting the transform accounting for a rendering used to produce the rendered image and effecting a change that appears as if a different exposure level was used to capture the image. *See, e.g.,* https://www.youtube.com/watch?v=D7XeSQX6X0w, Hasselblad demonstrative video showing selecting an exposure modification transform responsive to changes in the exposure setting ("EV") the transform accounting for a rendering used to produce the rendered image and effecting a change that appears as if a different exposure level was used to capture the image.

1
2
3
4
5
6
7
8
9
10
11
12
13



Hasselblad Phocus 3: Part 7 – Adjustment Layers

14   http://static.hasselblad.com/2014/12/Phocus_User-Manual_v17.pdf.

15       26.    The '485 Infringing Instrumentalities also use the selected exposure
16   modification transform to transform the rendered image.
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT FOR PATENT INFRINGEMENT



Hasselblad Phocus 3: Part 7 – Adjustment Layers

*See, e.g.,* https://www.youtube.com/watch?v=D7XeSQX6X0w demonstrative video showing the selected exposure modification transform used to transform the rendered image.

27.     The Hasselblad Defendants have thus infringed and continue to infringe at least claim 21 of the '485 patent by making, using, testing, selling, offering for sale, importing and/or licensing the '485 Infringing Instrumentalities, and operating such that all steps of at least claim 21 are performed.

28.     The users, customers, agents and/or other third parties of the '485 Infringing Instrumentalities (collectively, "third-party infringers") have been and are now infringing, including under 35 U.S.C. § 271(a), at least claim 21 of the '485 patent by using the '485 Infringing Instrumentalities.

29.     The Hasselblad Defendants have, since at least no later than May 26, 2017, known or been willfully blind to the fact that the third-party infringers' use of the '485 Infringing Instrumentalities directly infringe the '485 patent.

COMPLAINT FOR PATENT INFRINGEMENT

30.     The Hasselblad Defendants' knowledge of the '485 patent, which covers operating the '485 Infringing Instrumentalities in their intended manner and such that all limitations of at least claim 21 of the '485 patent are met, made it known to the Hasselblad Defendants that the third-party infringers' use of the '485 Infringing Instrumentalities would directly infringe the '485 patent, or, at the very least, render the Hasselblad Defendants willfully blind to such infringement.

31.     Having known or been willfully blind to the fact that the third-party infringers' use of the '485 Infringing Instrumentalities in their intended manner and such that all limitations of at least claim 21 of the '485 patent would directly infringe the '485 patent, the Hasselblad Defendants, upon information and belief, actively encouraged and continue to actively encourage the third-party infringers to directly infringe the '485 patent by making, using, testing, selling, offering for sale, importing and/or licensing said '485 Infringing Instrumentalities, and by, for example, marketing '485 Infringing Instrumentalities to the third-party infringers; supporting and managing the third-party infringers' continued use of the '485 Infringing Instrumentalities; and providing technical assistance to the third-party infringers during their continued use of the '485 Infringing Instrumentalities. *See*, *e.g.*, Phocus User Manual and instructional YouTube video cited above.

32.     The Hasselblad Defendants induce the third-party infringers to infringe at least claim 21 of the '485 patent by directing or encouraging them to operate the '485 Infringing Instrumentalities which, alone or in combination with the third-party infringers' devices, satisfy all limitations of claim 21 of the '485 patent.  For example, the Hasselblad Defendants advertise and promote the features of the '485 Infringing Instrumentalities and encourage the third-party infringers to operate the '485 Infringing Instrumentalities in an infringing manner.   The Hasselblad Defendants further provide technical assistance as to how the '485 Infringing Instrumentalities should be used by the third-party infringers (*see*, *e.g.*, Phocus User Manual and instructional YouTube video cited above).

33.     In response, the third-party infringers acquire and operate the '485 Infringing Instrumentalities such that all limitations of claim 21 of the '485 patent are practiced.

34.     Thus, the Hasselblad Defendants have specifically intended to induce, and have induced, the third-party infringers to infringe at least claim 21 of the '485 patent, and the Hasselblad Defendants have known of or been willfully blind to such infringement.  The Hasselblad Defendants have advised, encouraged, and/or aided the third-party infringers to engage in direct infringement, including through their encouragement, advice, and assistance to the third-party infringers to use the '485 Infringing Instrumentalities.

35.     Based on, among other things, the foregoing facts, the Hasselblad Defendants have induced, and continue to induce, infringement under 35 U.S.C. § 271(b) of at least claim 21 of the '485 patent.

36.     Further, the Hasselblad Defendants sell, provide and/or license to the third-party infringers '485 Infringing Instrumentalities that are especially made and adapted—and specifically intended by the Hasselblad Defendants—to be used as components and material parts of the inventions covered by the '485 patent.  For example, the Hasselblad Defendants provide hardware and related imaging processing software which the third-party infringers use in a manner such that all limitations of at least claim 21 of the '485 patent are met, and without which the third-party infringers would be unable to use and avail themselves of the '485 Infringing Instrumentalities in their intended manner.

37.     Upon information and belief, the Hasselblad Defendants also knew that the '485 Infringing Instrumentalities operate in a manner that satisfy all limitations of at least claim 21 of the '485 patent.

38.     The image processing / exposure modification transform technology in the '485 Infringing Instrumentalities is specially made and adapted to infringe at least claim 21 of the '485 patent.  Upon information and belief, the image

processing / exposure modification transform technology in the '485 Infringing Instrumentalities is not a staple article or commodity of commerce, and, because the functionality is designed to work with the '485 Infringing Instrumentalities solely in a manner that is covered by the '485 patent, it does not have a substantial non-infringing use.  At least by no later than May 26, 2017, based on the foregoing facts, the Hasselblad Defendants have known or been willfully blind to the fact that such functionality is especially made and adapted for—and is in fact used in—the '485 Infringing Instrumentalities in a manner that is covered by the '485 patent.

39.     Based on, among other things, the foregoing facts, the Hasselblad Defendants have contributorily infringed, and continue to contributorily infringe, at least claim 21 of the '485 patent under 35 U.S.C. § 271(c).

40.     The Hasselblad Defendants' acts of infringement of the '485 patent have been willful and intentional under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016).  Since at least May 26, 2017, the Hasselblad Defendants have willfully infringed the '485 patent by refusing to take a license and continuing the foregoing infringement.  Instead of taking a license to the '485 patent, the Hasselblad Defendants have made the business decision to "efficiently infringe" the '485 patent.  In doing so, the Hasselblad Defendants willfully infringe the '485 patent.

41.     The Hasselblad Defendants' acts of direct and indirect infringement have caused, and continue to cause, damage to MPV, and MPV is entitled to recover damages sustained as a result of the Hasselblad Defendants' wrongful acts in an amount subject to proof at trial.

## COUNT 2:  INFRINGEMENT OF THE '713 PATENT

42.     The allegations of paragraphs 1-41 of this Complaint are incorporated by reference as though fully set forth herein.

43.     MPV owns by assignment the entire right, title, and interest in the '713 patent.

COMPLAINT FOR PATENT INFRINGEMENT

44.    The '713 patent was issued by the United States Patent and Trademark Office on August 24, 2004 and is titled "Correcting Exposure in a Rendered Digital Image." A true and correct copy of the '713 patent is attached as Exhibit B.

45.    Upon information and belief, the Hasselblad Defendants have directly infringed at least claim 25 of the '713 patent by making, using, testing, selling, offering for sale, importing and/or licensing in the United States without authority their image processing software, such as Phocus software, ("the '713 Infringing Instrumentalities") in an exemplary manner as described below:

46.    One or more of the '713 Infringing Instrumentalities meet all the limitations of claim 25 of the '713 patent.   In particular, the '713 Infringing Instrumentalities perform a method for processing an image, including allowing a single user adjustable exposure setting to be changed.



http://static.hasselblad.com/2017/04/H6D-User-Manual-v1.4-170425.pdf.

47.    The '713 Infringing Instrumentalities also select an exposure modification transform responsive to changes in the exposure setting which transform accounts for a rendering used to produce the rendered digital image and which appears as if a different exposure level was used by the image capture device.

COMPLAINT FOR PATENT INFRINGEMENT

### *Exposure*

EV, contrast, brightness, highlight recovery, shadow fill and clarity can be set by sliders or value fields. Adjust when viewing at 100%.

Very briefly, highlight recovery reclaims data from the raw file to repair burnt out highlights, shadow fill improves the quality of shadow areas while clarity improves the contrast of mid-tones to give them 'punch'.

As usual, the use of these tools, singularly or combined, might require a certain amount of experimentation for optimum results for individual files. See separate sources for in-depth explanations.



http://static.hasselblad.com/2014/12/Phocus_User-Manual_v17.pdf.



Hasselblad Phocus 3: Part 7 – Adjustment Layers

*See,  e.g.,*  https://www.youtube.com/watch?v=D7XeSQX6X0w,  Hasselblad demonstrative video showing selecting an exposure modification transform responsive to changes in the exposure setting ("EV") the transform accounting for a rendering used to produce the rendered image and effecting a change that which appears as if a different exposure level was used by the image capture device.

---

13

COMPLAINT FOR PATENT INFRINGEMENT

48.    The '713 Infringing Instrumentalities also use the selected transform to transform the image and display the transformed image as the exposure setting is changed.



Hasselblad Phocus 3: Part 7 – Adjustment Layers

*See, e.g.,* https://www.youtube.com/watch?v=D7XeSQX6X0wdemonstrative video showing the selected exposure modification transform used to transform the rendered image and displaying the transformed image as the exposure setting is changed.

49.    The Hasselblad Defendants have thus infringed and continue to infringe at least claim 25 of the '713 patent by making, using, testing, selling, offering for sale, importing and/or licensing the '713 Infringing Instrumentalities, and operating such that all steps of at least claim 25 are performed.

50.    The users, customers, agents and/or other third parties of the '713 Infringing Instrumentalities (collectively, "third-party infringers") have been and are now infringing, including under 35 U.S.C. § 271(a), at least claim 25 of the

COMPLAINT FOR PATENT INFRINGEMENT

'713 patent by using the '713 Infringing Instrumentalities.

51.     The Hasselblad Defendants have, since at least no later than May 26, 2017, known or been willfully blind to the fact that the third-party infringers' use of the '713 Infringing Instrumentalities directly infringe the '713 patent.

52.     The Hasselblad Defendants' knowledge of the '713 patent, which covers operating the '713 Infringing Instrumentalities in their intended manner and such that all limitations of at least claim 25 of the '713 patent are met, made it known to the Hasselblad Defendants that the third-party infringers' use of the '713 Infringing Instrumentalities would directly infringe the '713 patent, or, at the very least, render the Hasselblad Defendants willfully blind to such infringement.

53.     Having known or been willfully blind to the fact that the third-party infringers' use of the '713 Infringing Instrumentalities in their intended manner and such that all limitations of at least claim 25 of the '713 patent would directly infringe the '713 patent, the Hasselblad Defendants, upon information and belief, actively encouraged and continue to actively encourage the third-party infringers to directly infringe the '713 patent by making, using, testing, selling, offering for sale, importing and/or licensing said '713 Infringing Instrumentalities, and by, for example, marketing '713 Infringing Instrumentalities to the third-party infringers; supporting and managing the third-party infringers' continued use of the '713 Infringing Instrumentalities; and providing technical assistance to the third-party infringers during their continued use of the '713 Infringing Instrumentalities. *See*, *e.g.*, Phocus User Manual and instructional YouTube video cited above.

54.     The Hasselblad Defendants induce the third-party infringers to infringe at least claim 25 of the '713 patent by directing or encouraging them to operate the '713 Infringing Instrumentalities which, alone or in combination with the third-party infringers' devices, satisfy all limitations of claim 25 of the '713 patent.  For example, the Hasselblad Defendants advertise and promote the features of the '713 Infringing Instrumentalities on their website and in YouTube videos and encourage

the third-party infringers to operate the '713 Infringing Instrumentalities in an infringing manner.  The Hasselblad Defendants further provide technical assistance as to how the '713 Infringing Instrumentalities should be used by the third-party infringers (*see*, *e.g.*, Phocus User Manual and instructional YouTube video cited above).  In response, the third-party infringers acquire and operate the '713 Infringing Instrumentalities such that all limitations of claim 25 of the '713 patent are practiced.

55.    Thus, the Hasselblad Defendants have specifically intended to induce, and have induced, the third-party infringers to infringe at least claim 25 of the '713 patent, and the Hasselblad Defendants have known of or been willfully blind to such infringement.  The Hasselblad Defendants have advised, encouraged, and/or aided the third-party infringers to engage in direct infringement, including through their encouragement, advice, and assistance to the third-party infringers to use the '713 Infringing Instrumentalities.

56.    Based on, among other things, the foregoing facts, the Hasselblad Defendants have induced, and continue to induce, infringement under 35 U.S.C. § 271(b) of at least claim 25 of the '713 patent.

57.    Further, the Hasselblad Defendants sell, provide and/or license to the third-party infringers '713 Infringing Instrumentalities that are especially made and adapted—and specifically intended by the Hasselblad Defendants—to be used as components and material parts of the inventions covered by the '713 patent.  For example, the DJI Defendants provide hardware and related image processing software which the third-party infringers use in a manner such that all limitations of at least claim 25 of the '713 patent are met, and without which the third-party infringers would be unable to use and avail themselves of the '713 Infringing Instrumentalities in their intended manner.

58.    Upon information and belief, the Hasselblad Defendants also knew that '713 Infringing Instrumentalities operate in a manner that satisfy all limitations

COMPLAINT FOR PATENT INFRINGEMENT

of at least claim 25 of the '713 patent.

59.     The image processing / exposure modification transform technology in the '713 Infringing Instrumentalities is specially made and adapted to infringe at least claim 25 of the '713 patent.  Upon information and belief, the image processing / exposure modification transform technology in the '713 Infringing Instrumentalities is not a staple article or commodity of commerce, and, because the functionality is designed to work with the '713 Infringing Instrumentalities solely in a manner that is covered by the '713 patent, it does not have a substantial non-infringing use.  At least by no later than May 26, 2017, based on the foregoing facts, the Hasselblad Defendants have known or been willfully blind to the fact that such functionality is especially made and adapted for—and is in fact used in—the '713 Infringing Instrumentalities in a manner that is covered by the '713 patent.

60.     Based on, among other things, the foregoing facts, the Hasselblad Defendants have contributorily infringed, and continue to contributorily infringe, at least claim 25 of the '713 patent under 35 U.S.C. § 271(c).

61.     The Hasselblad Defendants' acts of infringement of the '713 patent have been willful and intentional under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016).  Since at least May 26, 2017, the Hasselblad Defendants have willfully infringed the '713 patent by refusing to take a license and continuing the foregoing infringement.  Instead of taking a license to the '713 patent, the Hasselblad Defendants have made the business decision to "efficiently infringe" the '713 patent.  In doing so, the Hasselblad Defendants willfully infringe the '713 patent.

62.     The Hasselblad Defendants' acts of direct and indirect infringement have caused, and continue to cause, damage to MPV, and MPV is entitled to recover damages sustained as a result of the Hasselblad Defendants' wrongful acts in an amount subject to proof at trial.

## COUNT 3:  INFRINGEMENT OF THE '182 PATENT

63.    The allegations of paragraphs 1-62 of this Complaint are incorporated by reference as though fully set forth herein.

64.    MPV owns by assignment the entire right, title, and interest in the '182 patent.

65.    The '182 patent was issued by the United States Patent and Trademark Office on April 18, 2006 and is titled "Graphical User Interface Adapted to Allow Scene Content Annotation of Groups of Pictures in a Picture Database to Promote Efficient Database Browsing."  A true and correct copy of the '182 patent is attached as Exhibit C.

66.    Upon information and belief, the Hasselblad Defendants have directly infringed at least claim 9 of the '182 patent by making, using, testing, selling, offering for sale, importing and/or licensing in the United States without authority their Phocus software product ("the '182 Infringing Instrumentalities") in an exemplary manner as described below:

67.    One or more of the '182 Infringing Instrumentalities meet all the limitations of claim 9 of the '182 patent.  In particular, the '182 Infringing Instrumentalities include a graphical user interface adapted to annotate picture information for pictures in a picture database.

COMPLAINT FOR PATENT INFRINGEMENT



*See also*, https://www.hasselblad.com/phocus.

68.     The '182 Infringing Instrumentalities include a display generator adapted to generate a user-friendly display with indicia representing captured pictures.

COMPLAINT FOR PATENT INFRINGEMENT



69. The '182 Infringing Instrumentalities include a picture grouper to define a group of pictures in response to on-screen user input identifying a plurality of pictures as belonging to a group.

**Basic Options**

With the thumbnails visible, you can make a selection of the desired image files by clicking on them (Shift click for contiguous multiple selection or Cmd/Ctrl click for multiple individual selection). A selected image displays a white border surrounding it. You can choose between several options that provide immediate and automated actions regarding the selected images:

*See, e.g.*, Phocus User-Manual_v17 at p. 12.

70. The '182 Infringing Instrumentalities present an entry area for receiving information about the group of pictures.

COMPLAINT FOR PATENT INFRINGEMENT



## IPTC Keywords

Allows keyword inclusion to files individually or from sets. The tool can be contracted by dragging the lower bar upwards, automatically grouping the keywords (buttons) into numbered collections, as in the illustrations.

Clicking on the menu bar on the tool opens the settings panel to view sets, edit sets, select saved sets and create new sets. See *Editing* and *Managing IPTC keywords* on the following page for full details. Keywords can be added to thumbnails, singly or to multiple selections. Either write in a new keyword or choose from the list. See previous special section for further details.

*See*, *e.g.*, Phocus User-Manual_v17 at p. 46.

71.     The '182 Infringing Instrumentalities include a metadata receiver to accept customized metadata (which characterizes the group of pictures) input on the screen by the user in the entry area.



**Import**

See *Import* in previous section and *Adjustments* in the following section.

**Modify**

Opens a dialog offering a list of choices for batch modification of selected (shift clicked) thumbnails.

See illustrations below.

*See*, *e.g.*, Phocus User-Manual_v17 at p. 57; *see also*, Phocus User-Manual_v17 at p. 46 and 90.

72.     The '182 Infringing Instrumentalities include a metadata association

COMPLAINT FOR PATENT INFRINGEMENT

system adapted to automatically associate the customized metadata entry with all of the selected pictures in the group.

### *Quick Modify*

Changing One Tool Setting on Multiple Images
While the toolbar Modify function can be used to batch modify images with a variety of different tool settings, it is also possible to perform a quick modify with individual tools.

*See*, *e.g.*, Phocus User-Manual_v17 at p. 90; *see also*, Phocus User-Manual_v17 at p. 46 and 57.

73. The Hasselblad Defendants have thus infringed and continue to infringe at least claim 9 of the '182 patent by making, using, testing, selling, offering for sale, importing and/or licensing the '182 Infringing Instrumentalities, including within this District.

74. The users, customers, agents and/or other third parties of the '182 Infringing Instrumentalities (collectively, "third-party infringers") have been and are now infringing, including under 35 U.S.C. § 271(a), at least claim 9 of the '182 patent by using the '182 Infringing Instrumentalities.

75. The Hasselblad Defendants have, since at least no later than May 26, 2017, known or been willfully blind to the fact that the third-party infringers' use of the '182 Infringing Instrumentalities directly infringe the '182 patent.

76. The Hasselblad Defendants' knowledge of the '182 patent, which covers operating the '182 Infringing Instrumentalities in their intended manner and such that all limitations of at least claim 9 of the '182 patent are met, made it known to the Hasselblad Defendants that the third-party infringers' use of the '182 Infringing Instrumentalities would directly infringe the '182 patent, or, at the very least, render the Hasselblad Defendants willfully blind to such infringement.

COMPLAINT FOR PATENT INFRINGEMENT

77.     Having known or been willfully blind to the fact that the third-party infringers' use of the '182 Infringing Instrumentalities in their intended manner and such that all limitations of at least claim 9 of the '182 patent would directly infringe the '182 patent, the Hasselblad Defendants, upon information and belief, actively encouraged and continue to actively encourage the third-party infringers to directly infringe the '182 patent by making, using, testing, selling, offering for sale, importing and/or licensing said '182 Infringing Instrumentalities, and by, for example, marketing '182 Infringing Instrumentalities to the third-party infringers; supporting and managing the third-party infringers' continued use of the '182 Infringing Instrumentalities; and providing technical assistance to the third-party infringers during their continued use of the '182 Infringing Instrumentalities.  *See*, *e.g.*, https://www.hasselblad.com/phocus and Phocus User-Manual.

78.     The Hasselblad Defendants induce the third-party infringers to infringe at least claim 9 of the '182 patent by directing or encouraging them to operate the '182 Infringing Instrumentalities which, alone or in combination with the third-party infringers' devices, satisfy all limitations of claim 9 of the '182 patent.  For example, the Hasselblad Defendants advertise and promote the features of the '182 Infringing Instrumentalities at https://www.hasselblad.com/phocus and encourage the third-party infringers to operate the '182 Infringing Instrumentalities in an infringing manner.  The Hasselblad Defendants further provide technical assistance as to how the '182 Infringing Instrumentalities should be used by the third-party infringers (*see*, *e.g.*, Phocus User-Manual).  In response, the third-party infringers acquire and operate the '182 Infringing Instrumentalities such that all limitations of claim 9 of the '182 patent are practiced.

79.     Thus, the Hasselblad Defendants have specifically intended to induce, and have induced, the third-party infringers to infringe at least claim 9 of the '182 patent, and the Hasselblad Defendants have known of or been willfully blind to such infringement.  The Hasselblad Defendants have advised, encouraged, and/or

aided the third-party infringers to engage in direct infringement, including through their encouragement, advice, and assistance to the third-party infringers to use the '182 Infringing Instrumentalities.

80.    Based on, among other things, the foregoing facts, the Hasselblad Defendants have induced, and continue to induce, infringement under 35 U.S.C. § 271(b) of at least claim 9 of the '182 patent.

81.    Further, the Hasselblad Defendants sell, provide and/or license to the third-party infringers '182 Infringing Instrumentalities that are especially made and adapted—and specifically intended by the Hasselblad Defendants—to be used as components and material parts of the inventions covered by the '182 patent.  For example, the Hasselblad Defendants provide the Phocus software product which the third-party infringers use in a manner such that all limitations of at least claim 9 of the '182 patent are met, and without which the third-party infringers would be unable to use and avail themselves of the '182 Infringing Instrumentalities in their intended manner.

82.    Upon information and belief, the Hasselblad Defendants also knew that the '182 Infringing Instrumentalities operate in a manner that satisfy all limitations of at least claim 9 of the '182 patent.

83.    The Phocus technology in the '182 Infringing Instrumentalities is specially made and adapted to infringe at least claim 9 of the '182 patent.  Upon information and belief, the Phocus technology in the '182 Infringing Instrumentalities is not a staple article or commodity of commerce, and, because the functionality is designed to work with the '182 Infringing Instrumentalities solely in a manner that is covered by the '182 patent, it does not have a substantial non-infringing use.  At least by no later than May 26, 2017, based on the foregoing facts, the Hasselblad Defendants have known or been willfully blind to the fact that such functionality is especially made and adapted for—and is in fact used in—'182 Infringing Instrumentalities in a manner that is covered by the '182 patent.

84.     Based on, among other things, the foregoing facts, the Hasselblad Defendants have contributorily infringed, and continue to contributorily infringe, at least claim 9 of the '182 patent under 35 U.S.C. § 271(c).

85.     The Hasselblad Defendants' acts of infringement of the '182 patent have been willful and intentional under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016).  Since at least May 26, 2017, the Hasselblad Defendants have willfully infringed the '182 patent by refusing to take a license and continuing the foregoing infringement.  Instead of taking a license to the '182 patent, the Hasselblad Defendants have made the business decision to "efficiently infringe" the '182 patent.  In doing so, the Hasselblad Defendants willfully infringe the '182 patent.

86.     The Hasselblad Defendants' acts of direct and indirect infringement have caused, and continue to cause, damage to MPV, and MPV is entitled to recover damages sustained as a result of the Hasselblad Defendants' wrongful acts in an amount subject to proof at trial.

## COUNT 4:  INFRINGEMENT OF THE '046 PATENT

87.     The allegations of paragraphs 1-86 of this Complaint are incorporated by reference as though fully set forth herein.

88.     MPV owns by assignment the entire right, title, and interest in the '046 patent.

89.     The '046 patent was issued by the United States Patent and Trademark Office on July 14, 2015 and is titled "Method for Creating and Using Affective Information in a Digital Imaging System."  A true and correct copy of the '046 patent is attached as Exhibit D.

90.     Upon information and belief, the Hasselblad Defendants have directly infringed at least claim 14 of the '046 patent by making, using, testing, selling, offering for sale, importing and/or licensing in the United States without authority their Phocus software ("the '046 Infringing Instrumentalities") in an exemplary

COMPLAINT FOR PATENT INFRINGEMENT

manner as described below:

91.    One or more of the '046 Infringing Instrumentalities meet all the limitations of claim 14 of the '046 patent.  In particular, the '046 Infringing Instrumentalities comprise a non-transitory computer readable medium having instructions stored thereon.



http://www.hasselblad.com/software/phocus.

http://static.hasselblad.com/2017/04/H6D-User-Manual-v1.4-170425.pdf.

http://static.hasselblad.com/2014/12/Phocus_User-Manual_v17.pdf.

92.    The '046 Infringing Instrumentalities include instructions to receive a digital image set that includes associated importance ratings for a user:

http://static.hasselblad.com/2014/12/Phocus_User-Manual_v17.pdf.

### Thumbnail viewing, filtering and sorting

Thumbnails can be rated using either the **IAA** system or the **Star** system or both. **IAA** rating is automatically applied to files at capture with H camera/ CFV back firmware from before 2014 and appears in Phocus. All **IAA** files can be re-rated in Phocus if desired.

**Star** rating is applied in Phocus only. When applied and embedded at export (this is an option on the Large IPTC list), it will also be accessible and useable in other applications such as *Apple Aperture* and *Adobe Lightroom*.

Both rating systems can be exploited for sorting purposes in the **Thumbnail Browser** using differ- ent types of filtering.

Rating is applied to selected files by pressing numerical keys on the keyboard as follows:

| STAR rating | | IAA rating |
|---|---|---|
| 1 ☆ | | 6 🟢 |
| 2 ☆ ☆ | | 7 🟡 |
| 3 ☆ ☆ ☆ | | 8 🔴 |
| 4 ☆ ☆ ☆ ☆ | | |
| 5 ☆ ☆ ☆ ☆ ☆ | | |

http://static.hasselblad.com/2014/12/Phocus_User-Manual_v17.pdf.

93.    The '046 Infringing Instrumentalities include instructions to modify image attributes of a digital image in the image set to enhance or change a viewed image.

## Welcome to Phocus 3.0

It is our hope that you will open Phocus, take a look around, and be inspired to get to work with an imaging workflow that develops according to the way you want things to happen.

**Uncompromising Image Quality**

The Phocus RAW processor provides the ultimate in processing quality for Hasselblad digital images, including:

- Digital lens corrections for color aberration, distortion and vignetting (DAC I, II, and III)
- Hasselblad Natural Color Solution (HNCS) for perfect colors
- Moiré removal directly upon raw data, preserving image detail
- Selective adjustments using the Adjustment Layers tool

http://static.hasselblad.com/2014/12/Phocus_User-Manual_v17.pdf.

COMPLAINT FOR PATENT INFRINGEMENT

In Phocus, edits can be applied singly or collectively. Sets of edits are referred to as *Adjustments*.

Note that an *Adjustment* is an internal function within Phocus only. When the file is exported into another format it has the desired edit instructions applied to the exported file. That is, all edits are nondestructive in Phocus and so 3F files remain unaffected and can be recalled at a later date as identical as they were when first processed from the raw data. So, in simple terms, you cannot "press the wrong button" in Phocus because the original file always remains.

*Adjustments* can also be saved for future use on other files and will appear beneath the *User* heading. *Adjustments* can also be applied simultaneously to a whole batch of files by using the *Modify* tool. This means you can always go back to something you preferred a few minutes ago or back to something you preferred several months ago, for example. In that way, a whole folder of captures can be simultaneously edited in exactly the same way, securely and automatically, in accordance with your own or your clients preferences, for example.

http://static.hasselblad.com/2014/12/Phocus_User-Manual_v17.pdf.

94.    The '046 Infringing Instrumentalities include instructions to provide digital images in order of importance ratings, including one or more digital images that have modified image attributes.

Thumbnails can be viewed and sorted in a number of ways. Click on the Menu Icon on the right side of the menu bar to reveal an options menu. Navigate down to the required item for options.






http://static.hasselblad.com/2014/12/Phocus_User-Manual_v17.pdf.

COMPLAINT FOR PATENT INFRINGEMENT



http://static.hasselblad.com/2014/12/Phocus_User-Manual_v17.pdf.

95.     The Hasselblad Defendants have thus infringed and continue to infringe at least claim 14 of the '046 patent by making, using, testing, selling, offering for sale, importing and/or licensing the '046 Infringing Instrumentalities, including within this District.

96.     The users, customers, agents and/or other third parties of the '046 Infringing Instrumentalities (collectively, "third-party infringers") have been and are now infringing, including under 35 U.S.C. § 271(a), at least claim 14 of the '046 patent by using the '046 Infringing Instrumentalities.

97.     The Hasselblad Defendants have, since at least no later than May 26, 2017, known or been willfully blind to the fact that the third-party infringers' use of the '046 Infringing Instrumentalities directly infringe the '046 patent.

98.     The Hasselblad Defendants' knowledge of the '046 patent, which covers operating the '046 Infringing Instrumentalities in their intended manner and such that all limitations of at least claim 14 of the '046 patent are met, made it known to the Hasselblad Defendants that the third-party infringers' use of the '046 Infringing Instrumentalities would directly infringe the '046 patent, or, at the very least, render the Hasselblad Defendants willfully blind to such infringement.

99.     Having known or been willfully blind to the fact that the third-party infringers' use of the '046 Infringing Instrumentalities in their intended manner and such that all limitations of at least claim 14 of the '046 patent would directly

infringe the '046 patent, the Hasselblad Defendants, upon information and belief, actively encouraged and continue to actively encourage the third-party infringers to directly infringe the '046 patent by making, using, testing, selling, offering for sale, importing and/or licensing said '046 Infringing Instrumentalities, and by, for example, marketing '046 Infringing Instrumentalities to the third-party infringers; supporting and managing the third-party infringers' continued use of the '046 Infringing Instrumentalities; and providing technical assistance to the third-party infringers during their continued use of the '046 Infringing Instrumentalities. *See*, *e.g.*, http://static.hasselblad.com/2014/12/Phocus_User-Manual_v17.pdf.

100.   The Hasselblad Defendants induce the third-party infringers to infringe at least claim 14 of the '046 patent by directing or encouraging them to operate the '046 Infringing Instrumentalities which, alone or in combination with the third-party infringers' devices, satisfy all limitations of claim 14 of the '046 patent.  For example, the Hasselblad Defendants advertise and promote the features of the '046 Infringing Instrumentalities on www.hasselblad.com and encourage the third-party infringers to operate the '046 Infringing Instrumentalities in an infringing manner. The Hasselblad Defendants further provide technical assistance as to how the '046 Infringing Instrumentalities should be used by the third-party infringers (*see*, *e.g.*, http://static.hasselblad.com/2014/12/Phocus_User-Manual_v17.pdf).  In response, the third-party infringers acquire and operate the '046 Infringing Instrumentalities such that all limitations of claim 14 of the '046 patent are practiced.

101.   Thus, the Hasselblad Defendants have specifically intended to induce, and have induced, the third-party infringers to infringe at least claim 14 of the '046 patent, and the Hasselblad Defendants have known of or been willfully blind to such infringement.  The Hasselblad Defendants have advised, encouraged, and/or aided the third-party infringers to engage in direct infringement, including through their encouragement, advice, and assistance to the third-party infringers to use the '046 Infringing Instrumentalities.

COMPLAINT FOR PATENT INFRINGEMENT

102.   Based on, among other things, the foregoing facts, the Hasselblad Defendants have induced, and continue to induce, infringement under 35 U.S.C. § 271(b) of at least claim 14 of the '046 patent.

103.   Further, the Hasselblad Defendants sell, provide and/or license to the third-party infringers '046 Infringing Instrumentalities that are especially made and adapted—and specifically intended by the Hasselblad Defendants—to be used as components and material parts of the inventions covered by the '046 patent.  For example, the Hasselblad Defendants provide Phocus software which the third-party infringers use in a manner such that all limitations of at least claim 14 of the '046 patent are met, and without which the third-party infringers would be unable to use and avail themselves of the '046 Infringing Instrumentalities in their intended manner.

104.   Upon information and belief, the Hasselblad Defendants also knew that the '046 Infringing Instrumentalities operate in a manner that satisfy all limitations of at least claim 14 of the '046 patent.

105.   The Phocus technology in the '046 Infringing Instrumentalities is specially made and adapted to infringe at least claim 14 of the '046 patent.  Upon information and belief, the Phocus technology in the '046 Infringing Instrumentalities is not a staple article or commodity of commerce, and, because the functionality is designed to work with the '046 Infringing Instrumentalities solely in a manner that is covered by the '046 patent, it does not have a substantial non-infringing use.  At least by no later than May 26, 2017, based on the foregoing facts, the Hasselblad Defendants have known or been willfully blind to the fact that such functionality is especially made and adapted for—and is in fact used in—'046 Infringing Instrumentalities in a manner that is covered by the '046 patent.

106.   Based on, among other things, the foregoing facts, the Hasselblad Defendants have contributorily infringed, and continue to contributorily infringe, at least claim 14 of the '046 patent under 35 U.S.C. § 271(c).

107.   The Hasselblad Defendants' acts of infringement of the '046 patent have been willful and intentional under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016).  Since at least May 26, 2017, the Hasselblad Defendants have willfully infringed the '046 patent by refusing to take a license and continuing the foregoing infringement.  Instead of taking a license to the '046 patent, the Hasselblad Defendants have made the business decision to "efficiently infringe" the '046 patent.  In doing so, the Hasselblad Defendants willfully infringe the '046 patent.

108.   The Hasselblad Defendants' acts of direct and indirect infringement have caused, and continue to cause, damage to MPV, and MPV is entitled to recover damages sustained as a result of the Hasselblad Defendants' wrongful acts in an amount subject to proof at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, MPV respectfully requests the following relief:

A.    A judgment that the Hasselblad Defendants have willfully infringed the '485 patent;

B.    A judgment that the Hasselblad Defendants have willfully infringed the '713 patent;

C.    A judgment that the Hasselblad Defendants have willfully infringed the '182 patent;

D.    A judgment that the Hasselblad Defendants have willfully infringed the '046 patent;

E.    A judgment that MPV be awarded damages adequate to compensate it for the Hasselblad Defendants' past infringement and any continuing or future infringement of the '485 patent, the '713 patent, the '182 patent, and the '046 patent, including pre-judgment and post-judgment interest costs and disbursements as justified under 35 U.S.C. § 284 and an accounting;

F.    That this be determined to be an exceptional case under 35 U.S.C. §

285 and that MPV be awarded enhanced damages up to treble damages for willful infringement as provided by 35 U.S.C. § 284;

   G.  That MPV be granted its reasonable attorneys' fees in this action;

   H.  That this Court award MPV its costs; and

   I.  That this Court award MPV such other and further relief as the Court deems proper.

## **DEMAND FOR JURY TRIAL**

   Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, MPV demands a trial by jury for all issues so triable.

Dated: March 16, 2018  By  */s/ Marc Belloli*

          Marc Belloli (SBN 244290)
          mbelloli@feinday.com
          FEINBERG DAY ALBERTI LIM & BELLOLI LLP
          1600 El Camino Real, Suite 280
          Menlo Park, CA  94025
          Telephone:  650 618-4360
          Facsimile:  650 618-4368

          *Attorneys for Plaintiff*
          Monument Peak Ventures, LLC

COMPLAINT FOR PATENT INFRINGEMENT